**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

COBBLER NEVADA, LLC,
*Plaintiff-Appellant*,

v.

THOMAS GONZALES,
*Defendant-Appellee.*

No. 17-35041

D.C. No.
3:15-cv-00866-SB

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 18, 2018
Portland, Oregon

Filed August 27, 2018

Before: M. Margaret McKeown and Richard A. Paez,
Circuit Judges, and Robert S. Lasnik,* District Judge.

Opinion by Judge McKeown

---

*The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

## SUMMARY[**]

### Copyright

The panel affirmed the district court's dismissal of an action under the Copyright Act, alleging direct and contributory infringement of plaintiff's copyrights in a film.

Plaintiff alleged unauthorized downloading and distribution of the film through peer-to-peer BitTorrent networks. The panel held that the bare allegation that the defendant was the registered subscriber of an Internet Protocol address associated with infringing activity was insufficient to state a claim for direct or contributory infringement. The panel also held that the district court did not abuse its discretion in awarding attorney's fees to the defendant under 17 U.S.C. § 505.

### COUNSEL

John Mansfield (argued), Harris Bricken, Portland, Oregon; Carl D. Crowell, Crowell Law, Salem, Oregon; for Plaintiff-Appellant.

David Hamlin Madden (argued), Mersenne Law, Tigard, Oregon, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

McKEOWN, Circuit Judge:

In this copyright action, we consider whether a bare allegation that a defendant is the registered subscriber of an Internet Protocol ("IP") address associated with infringing activity is sufficient to state a claim for direct or contributory infringement. We conclude that it is not.

After tracing infringement of its copyrights to a particular IP address, Cobbler Nevada, LLC filed suit against the John Doe IP address for direct and contributory copyright infringement. Cobbler Nevada soon discovered that the IP address was registered to Thomas Gonzales, who operated an adult foster care home. Cobbler Nevada then amended its complaint to name Gonzales as the sole defendant, alleging that he directly infringed by copying and distributing copyrighted works himself or, in the alternative, contributed to another's infringement by failing to secure his internet connection.

The district court properly dismissed Cobbler Nevada's claims. The direct infringement claim fails because Gonzales's status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer. Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer. Nor can Cobbler Nevada succeed on a contributory infringement theory because, without allegations of intentional encouragement or inducement of infringement, an individual's failure to take affirmative steps

to police his internet connection is insufficient to state a claim.

## BACKGROUND

Cobbler Nevada holds copyrights in the film *The Cobbler*, a magic realism film that features "[a] cobbler, bored of his everyday life, [who] stumbles upon a magical heirloom that allows him to become other people . . . ." *The Cobbler*, IMDB, https://www.imdb.com/title/tt3203616/ (last visited July 26, 2018). Like a number of major motion pictures scheduled for theatrical release, *The Cobbler* has been the subject of unauthorized downloading and distribution (i.e., pirating) through BitTorrent networks. *See generally Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035–36 (9th Cir. 2018) (providing background on piracy via peer-to-peer BitTorrent networks). According to Cobbler Nevada, there have been over 10,000 instances of infringing activity of *The Cobbler* traced to Oregon alone.

Cobbler Nevada identified an IP address located in Portland, Oregon, that had downloaded and distributed *The Cobbler* multiple times without authorization. Cobbler Nevada filed suit against the unknown holder of the IP address—named in the complaint as Doe-24.21.136.125—for direct and contributory copyright infringement. Records subpoenaed from Comcast identified Thomas Gonzales as the subscriber of the internet service associated with the IP address.

After several attempts to reach Gonzales, Cobbler Nevada's counsel finally connected with Gonzales via telephone. Once counsel learned that the internet service was accessible to both residents and visitors at an adult care home, he concluded that "it does not appear that [Gonzales] is a regular occupant of the residence or the likely infringer."

Due to confidentiality concerns, Gonzales refused to share the names or work schedules of the individuals living and working in the home without a court order. Although the district court granted leave to depose Gonzales, the deposition revealed no new information regarding the identity of the actual infringer.[1]

Nevertheless, Cobbler Nevada filed a First Amended Complaint and named Gonzales as the sole defendant. Cobbler Nevada alleged that Gonzales "copied and distributed" *The Cobbler* or, in the alternative, "facilitated and promoted the use of the internet for the infringing of [Cobbler Nevada's] exclusive rights under the Copyright Act" by failing to "reasonably secure, police and protect" the use of his internet service. Cobbler Nevada also claimed that Gonzales "ha[d] been sent over 400 notices of infringing activity," yet "failed and refused to take any action whatsoever and either continued to infringe by using BitTorrent to download and distribute copyrighted content or continued to allow infringing activity after such notices."

The only facts in support of Cobbler Nevada's direct infringement claim were that Gonzales was "the subscriber of the IP address used to download or distribute the movie, and that he was sent notices of infringing activity to which he did not respond." Relying on the magistrate judge's reasoning that these allegations were "not enough" to state a claim because there were no facts connecting Gonzales to

---

[1] During his deposition, Gonzales testified that, once he became aware of the infringing activity, he attempted to find out who the infringer was and instructed everyone to stop infringing. He also testified that the staff took the same steps, but no one was able to identify the infringer.

the infringing activity, the district court dismissed the direct infringement claim without prejudice.

The district court also dismissed the contributory infringement claim, which rested on the theory that Gonzales failed to stop infringement by others after being notified of such infringement. The court wrote that liability arises by "actively encouraging . . . infringement through specific acts," and not by mere failure to take affirmative steps to prevent infringement. Cobbler Nevada's failure to allege that Gonzales "promoted, encouraged, enticed, persuaded, or induced another to infringe any copyright, let alone [Cobbler Nevada's] copyright," sunk the claim.

The district court gave Cobbler Nevada three weeks to file an amended complaint. Instead of amending its claims against Gonzales, Cobbler Nevada filed a Second Amended Complaint in which, once again, it named the Doe IP address as the sole defendant. No new factual allegations were added. The magistrate judge ordered Cobbler Nevada to show cause why the Second Amended Complaint should not be dismissed for failure to cure the deficiencies identified in the court's dismissal of the First Amended Complaint, or for failure to identify the unknown party in a timely manner pursuant to Federal Rule of Civil Procedure 4(m). Less than a week later, Cobbler Nevada filed a notice of voluntary dismissal.

Gonzales then filed a motion requesting entry of judgment dismissing the case and for attorney's fees for the contributory infringement claim. The district court granted the motion and awarded Gonzales attorney's fees of $17,222.40 and costs of $252.20.

## ANALYSIS

## I. The District Court Properly Dismissed Cobbler Nevada's Direct Infringement Claim Without Prejudice

Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement. Internet providers, such as Comcast or AT&T, can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address. Identifying an infringer becomes even more difficult in instances like this one, where numerous people live in and visit a facility that uses the same internet service. While we recognize this obstacle to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer.

The only connection between Gonzales and the infringement was that he was the registered internet subscriber and that he was sent infringement notices. To establish a claim of copyright infringement, Cobbler Nevada "must show that [it] owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Cobbler Nevada has not done so.

This is a situation "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, . . . stop[ping] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The allegations are not "enough to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This result should come as no surprise to Cobbler Nevada, which acknowledged that its independent investigation did not permit identification of "a specific party that is likely to be the infringer."

Nor did the district court err in entering judgment in favor of Gonzales after Cobbler Nevada voluntarily dismissed its Second Amended Complaint. Once the claims against Gonzales were dismissed, Cobbler Nevada failed to cure the deficiencies and instead amended its complaint to name the Doe IP address as the sole defendant. This put things right back where they started, naming an IP address without identifying an actual infringer. Recognizing that the claims against Gonzales were not resolved, the district court entered judgment reflecting its earlier dismissal of Cobbler Nevada's direct infringement claim without prejudice and the contributory infringement claim with prejudice. Cobbler Nevada argues that the district court should have granted it further leave to amend before entering judgment, which had the effect of foreclosing any further amendment. *See Weeks v. Bayer*, 246 F.3d 1231, 1236–37 (9th Cir. 2001). In light of Cobbler Nevada's prior amendments to the complaint and the futility of any further amendment, however, the district court acted within its discretion in not granting further leave to amend. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

## II. The District Court Properly Dismissed Cobbler Nevada's Contributory Infringement Claim With Prejudice

We have adopted the well-settled rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) (alteration in original) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 914, 930 (2005)). Stated differently, "liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (internal quotation marks omitted). A claim for contributory infringement requires allegations that the defendant is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (brackets omitted) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Cobbler Nevada's contributory infringement claim is premised on a bare allegation that Gonzales failed to police his internet service. This perfunctory allegation, without more, does not sufficiently link Gonzales to the alleged infringement.

At the outset, we recognize that Gonzales's position—a subscriber to internet service—does not fit cleanly within our typical contributory liability framework, which often involves consumer-facing internet platforms. *See, e.g.*, *Grokster*, 545 U.S. at 919–20 (computer software provider); *Amazon*, 508 F.3d at 1171 (search engine). Nevertheless, it is no leap to apply the framework of similar technology-based cases to our analysis of Gonzales's liability.

In *Sony Corp. of America v. Universal City Studios, Inc.*, the Supreme Court held that liability for another's infringement cannot arise from the mere distribution of a product that is "widely used for legitimate, [non-infringing] purposes." 464 U.S. 417, 442 (1984). The Court later refined the standard for liability, holding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 919. In essence, the limitation of liability in *Sony*—premised on a refusal to impute intent to a defendant based solely on knowledge that a product might be used for infringement—does not apply "where evidence . . . shows statements or actions directed to promoting infringement." *Id.* at 935. The Court was clear, however, that "in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n.12; *see also id.* at 937 ("[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability.").

Although circuit courts approach contributory liability through varying lenses, our circuit has identified two strands of liability following *Sony* and *Grokster*: "actively encouraging (or inducing) infringement through specific acts" or "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Amazon*, 508 F.3d at 1170 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). We analyze contributory liability "in light of 'rules of fault-based liability derived

from the common law,' and common law principles establish that intent may be imputed." *Id.* at 1170–71 (quoting *Grokster*, 545 U.S. 934–35).

Turning to the first strand, Cobbler Nevada's complaint lacks any allegations that Gonzales "actively encourage[ed] (or induc[ed]) infringement through specific acts." *Id.* at 1170. Nothing in Cobbler Nevada's complaint alleges, or even suggests, that Gonzales actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct." *Grokster*, 545 U.S. at 937. No allegations suggest that Gonzales made any "clear expression" or took "affirmative steps" to foster the infringement—Gonzales's only action was his failure to "secure, police and protect" the connection. *Id.* at 919; *see also* 3 Nimmer on Copyright § 12.04 ("Inducement liability . . . rests [] on the defendant's 'active steps to encourage infringement' leading to actual infringement taking place.") (quoting *Grokster*, 545 U.S. at 936). Because a "failure to take affirmative steps to prevent infringement" alone cannot trigger liability, *Grokster*, 545 U.S. at 939 n.12, Cobbler Nevada failed to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Nor does the second strand implicate Gonzales. Providing internet access can hardly be said to be distributing a product or service that is not "capable of substantial" or "commercially significant noninfringing uses." *Sony*, 464 U.S. at 442.

We note that Cobbler Nevada's theory both strays from precedent and effectively creates an affirmative duty for private internet subscribers to actively monitor their internet service for infringement. Imposing such a duty would put at risk any purchaser of internet service who shares access with

a family member or roommate, or who is not technologically savvy enough to secure the connection to block access by a frugal neighbor.  This situation hardly seems to be one of "the circumstances in which it is just to hold one individual accountable for the actions of another."  *Id.* at 435.

## III. The District Court Did Not Abuse its Discretion By Awarding Attorney's Fees

The Copyright Act states that the district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs . . . ."  17 U.S.C. § 505.  Gonzales is the "prevailing party" because Cobbler Nevada's contributory infringement claim was dismissed with prejudice.  *See Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009) ("[A] defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court.").[2]  In awarding fees to Gonzales, the district court acted within its discretion.  *See Entm't Research* 10 *Grp. v. Genesis Creative Grp.*, 122 F.3d 1211, 1216–17, 1228–29 (9th Cir. 1997).

The court "enjoys 'wide latitude to award attorney's fees based on the totality of circumstances in a case,'" though "its discretion must remain tethered to judicial guideposts." *Glacier Films*, 2018 WL 3542839, at \*3 (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1985 (2016)). To guide the district court's discretion, the Supreme Court and our court have provided a "nonexclusive" list of factors for courts to consider in making a fee determination. *Id*.; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994);

---

[2] Gonzales sought fees only for the contributory infringement claim.

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017).

The district court properly applied the Supreme Court's "*Fogerty* factors" to the particulars of this case. To begin, the court focused on the objective unreasonableness of the losing party's litigating position, a factor that carries "substantial weight." *Kirtsaeng*, 136 S. Ct. at 1983; *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018). Specifically, the court flagged as unreasonable Cobbler Nevada's decision to name Gonzales as the defendant, even after concluding that Gonzales was not "a regular occupant of the residence or a likely infringer." The court also considered deterrence: it reasoned that awarding fees would deter Cobbler Nevada from an "overaggressive pursuit of alleged infringers without a reasonable factual basis" while encouraging defendants with valid defenses to defend their rights. *See Fogerty*, 510 U.S. at 534 n.19. The court's rationale is in keeping with the purposes of the Copyright Act. *See Kirtsaeng*, 136 S. Ct. at 1988–89 (a district court "may order fee-shifting . . . to deter . . . overaggressive assertions of copyright claims").

On the whole, the district court "consider[ed] the facts of [this] case, weigh[ed] the appropriate factors, and ma[de] a fee determination based on the conduct of both parties."

*Glacier Films*, 2018 WL 3542839, at \*9.**[3]**  We thus uphold the fee determination.**[4]**

**AFFIRMED.**

---

**[3]** In *Glacier Films*, we reversed and remanded a fees ruling because the district court had based its decision "on a one-size-fits-all disapproval of *other* BitTorrent suits," not on the facts of the case at hand.  2018 WL 3542839, at \*1, \*9.  By contrast, the district court trained its focus here on the unreasonable conduct of Cobbler Nevada in this particular case.

**[4]** To the extent Cobbler Nevada claims that the district court had no jurisdiction to award attorney's fees after the voluntary dismissal, we reject that argument for the simple reason that Gonzales was not a party to the voluntary dismissal. *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) ("The filing of a notice of voluntary dismissal with the court automatically terminates the action as to the *defendants who are the subjects of the notice*." (emphasis added)).  At the time of the voluntary dismissal, the only defendant named in the Second Amended Complaint was the Doe IP address, not Gonzales.